IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ZACHARY KNIGHT,
      Petitioner,

vs.                        Case No.:  1:16cv135/WTH/EMT

JULIE JONES,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus and supporting memorandum, filed pursuant to 28 U.S.C. § 2254 (ECF Nos. 1, 2). Respondent filed an answer and relevant portions of the state court record (ECF No. 12).  Petitioner filed a reply (ECF No. 14).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the

opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 12).[1] Petitioner was originally charged in the Circuit Court in and for Levy County, Florida, Case No. 2011-CF-775, with two counts of sexual battery by threat of force or violence likely to cause serious personal injury (Counts I, IV), one count of aggravated assault with a deadly weapon (Count II), one count of false imprisonment (Count III), and one count of tampering with a witness, victim, or informant (Count V) (Ex. F at 86–87).  The parties negotiated a written plea agreement (*see* Ex. F at 122–26), and requested that the court accept it at a hearing on February 7, 2013 (Ex. G).[2]  The court rejected the negotiated plea and announced that Petitioner could either plead "straight up" to the court, or proceed to

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 12).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

[2] Pursuant to the negotiated plea, the parties agreed as follows:  (1) the State would reduce Count I to second degree sexual battery (instead of first degree) and dismiss Counts II, III, and IV; (2) Petitioner would plead guilty to the remaining counts; and (3) Petitioner would be adjudicated guilty, designated as a sexual offender, and sentenced to ten (10) years in prison, followed by five (5) years of sex offender probation (with electronic monitoring) on the sexual battery count, and fifteen (15) years of probation (with electronic monitoring) on the tampering count, to run consecutively to the probationary term imposed on the sexual battery count (Ex. F at 122–26).

trial (*id.* at 2–3).  The court recessed the proceeding to permit defense counsel to

consult with Petitioner (*id.*).  Following the recess, the State announced that it was

amending the information to reduce Count I to second degree sexual battery (instead

of first degree) and dismiss Counts II, III, and IV, thereby reducing Petitioner's

maximum total sentence exposure from 100 years in prison to 45 years (Ex. G at 3;

*see also* Ex. F at 128).  Defense counsel announced that Petitioner wished to waive

his right to arraignment on the amended information and to enter a plea to the two

remaining charges (second degree sexual battery and tampering with a witness or

victim) and proceed to sentencing (Ex. G at 3–4).  Following a colloquy, during which

Petitioner acknowledged his understanding that the court could sentence him to a total

of 45 years in prison, and that his sentence could include sex offender probation, and

following the State's announcing the factual basis for the plea, the court accepted the

plea (*id.* at 4–14).  The court sentenced Petitioner to 30 years in prison on the

tampering count, with credit for 454 days, and a consecutive term of 15 years of sex

offender probation on the sexual battery count (Ex. G at 23, Ex. F at 105–19).

Petitioner did not initially appeal the judgment, but on December 31, 2013, the

Florida First District Court of Appeal ("First DCA") granted his petition for belated

appeal in Case No. 1D13-3082 (Exs. A, D, E).  Knight v. State, 128 So. 3d 974 (Fla.

1st DCA 2013) (Mem). The trial court appointed counsel to represent Petitioner in the direct appeal, Case No. 1D14-600 (Ex. F at 184–85). Petitioner's counsel filed a brief, pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (Ex. H). Petitioner filed a pro se initial brief (Ex. I). The First DCA affirmed the judgment per curiam without written opinion on October 13, 2014, with the mandate issuing November 10, 2014 (Exs. J, K). <u>Knight v. State</u>, 150 3o. 2d 1138 (Fla. 1st DCA 2014) (Table).

On April 25, 2014, during the pendency of the direct appeal, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Ex. L at 1–7). The state circuit court summarily denied the motion on May 1, 2014 (*id.* at 9–11).

On June 18, 2015, Petitioner, through counsel, filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. O at 1–17). The state circuit court summarily denied the motion on June 22, 2015 (*id.* at 18–23). Petitioner appealed the decision to the First DCA, Case No. 1D15-3098 (Exs. P, Q). The First DCA affirmed the decision per curiam without

written opinion on September 21, 2015, with the mandate issuing October 7, 2015

(Exs. R, S).  <u>Knight v. State</u>, 173 So. 3d 970 (Fla. 1st DCA 2015) (Table).

Petitioner, through counsel, filed the instant federal habeas action on March 28,

2016 (ECF No. 1).

## II.    STANDARD OF REVIEW

Federal courts may grant habeas corpus relief for persons in state custody

pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death

Penalty Act of 1996 ("AEDPA").  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19.

Section 2254(d) provides, in relevant part:

> **(d)**  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> **(1)**  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> **(2)**  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the Williams framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  Thaler v. Haynes, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); Woods v. Donald, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for

purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See* Woods, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)). If the state court decision is contrary to clearly established federal law, the

federal habeas court must independently consider the merits of the petitioner's claim.

*See* Panetti v. Quarterman, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662

(2007).

If the "contrary to" clause is not satisfied, the federal habeas court next

determines whether the state court "unreasonably applied" the governing legal

principles set forth in the Supreme Court's cases.  The federal court defers to the state

court's reasoning unless the state court's application of the legal principle(s) was

"objectively unreasonable" in light of the record before the state court.  Williams, 529

U.S. at 409; *see* Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed.

2d 683 (2004) (per curiam).  In applying this standard, the Supreme Court has

emphasized:

> When reviewing state criminal convictions on collateral review, federal
> judges are required to afford state courts due respect by overturning their
> decisions only when there could be no reasonable dispute that they were
> wrong.  Federal habeas review thus exists as "a guard against extreme
> malfunctions in the state criminal justice systems, not a substitute for
> ordinary error correction through appeal."   Harrington, *supra*, at
> 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

Woods, 135 S. Ct. at 1376 (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct.

770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See* Gill v. Mecusker, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause, the federal court applies an objective test.  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance."  Brumfield v. Cain, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1).  The petitioner bears "the burden of rebutting the presumption of correctness by clear

and convincing evidence." *Id.*; *see, e.g.*, <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by the AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *See* <u>Cave v. Sec'y for Dep't of Corr.</u>, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit has declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision."  <u>Gill</u>, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied the AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* <u>Panetti</u>, 551 U.S. at 954.  Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this

standard is difficult to meet, that is because it was meant to be." <u>Richter</u>, 562 U.S. at 102.

Within this framework, the court will review Petitioner's claims.

## III.    PETITIONER'S CLAIMS

A.    <u>Ground One:  "Mr. Knight was deprived of his constitutional right to effective assistance of counsel when his attorney failed to move to disqualify the Honorable Stanley H. Griffis, III, from presiding over the proceedings in Mr. Knight's case."</u>

Petitioner alleges that prior to his plea, he told defense counsel, Attorney Gloria Fletcher, that the victim, Ms. Foran, was a medic and supervisor with the Levy County Emergency Medical Services and had previously rendered aid to Judge Griffis' child at Judge Griffis' residence (ECF No. 1 at 4–5; ECF No. 2 at 6–7, 10–20).[3]  Petitioner alleges prior to the date of the offenses, Ms. Foran told him that she rendered medical aid on several occasions to Judge Griffis' child (ECF No. 2 at 7).  Petitioner alleges Ms. Foran told him that on one occasion, the child was in respiratory distress and Judge Griffis' wife yelled at Foran as she treated the child (*id.*).  Petitioner alleges Ms. Foran told him that after Foran transported the child to the hospital, Judge Griffis specifically sought her out and apologized for his wife's behavior (*id.*).  Petitioner

---

[3] The page references to the parties' pleadings reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

alleges he told Attorney Fletcher that he feared that Judge Griffis would treat him unfairly (ECF No. 1 at 4–5; ECF No. 2 at 6–7, 10–20).

Petitioner contends the circumstances satisfied the standard for recusal under Florida law, and Attorney Fletcher was deficient for failing to move to recuse Judge Griffis (ECF No. 2 at 11–13 (citing Florida state cases)).  Petitioner alleges counsel's error severely prejudiced his ability to receive a fair plea and sentencing proceeding (*id.*).

Respondent concedes Petitioner exhausted this claim in the state courts (ECF No. 12 at 12).  Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law, nor was it based upon an unreasonable determination of fact (*id.* at 12–15).

1.      Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

The focus of inquiry under the performance prong of <u>Strickland</u> is whether counsel's assistance was reasonable considering all the circumstances and under prevailing professional norms. <u>Strickland</u>, 466 U.S. at 688–89, 691. "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689. "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." <u>Michael v. Crosby</u>, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting <u>Chandler</u>, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting <u>Putman v. Head</u>, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of demonstrating prejudice is high. *See* <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260 (11th

Cir. 2002). To establish prejudice, Petitioner must show "that every fair-minded jurist would conclude 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Jones v. GDCP Warden, 753 F.3d 1171, 1184 (11th Cir. 2014) (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome," not that counsel's conduct more likely than not altered the outcome of the proceeding. Id. (citation omitted). And Petitioner must show that the likelihood of a different result is substantial, not just conceivable. Williamson v. Fla. Dep't of Corr., 805 F.3d 1009, 1016 (11th Cir. 2015) (citing Richter, 562 U.S. at 112).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Richter, 131 S. Ct. at 788. As the Richter Court explained:

The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id. (citations omitted).

### 2.    Federal Review of State Court Decision

Petitioner raised this claim as Issue One in his Rule 3.850 motion (Ex. O at 8–14). The state circuit court adjudicated the claim as follows:

In order to make out a prima facie case for ineffective assistance of counsel, a defendant must assert that trial counsel's performance did not comply with prevailing standards of professionalism which proved detrimental to the defendant. *Strickland v. Washington*, 466 U.S. 668, 691–92 (1984). If the movant does not point to prejudice the court need not make a ruling on the performance component, and vice versa. *Johnson v. State*, 593 So. 2d 206, 209 (Fla. 1992). Furthermore, when alleging ineffective assistance of counsel a defendant must plead unprofessional error and prejudice with specificity. *See Smith v. State*, 445 So. 2d 323, 325 (Fla. 1983); *see also Cunningham v. State*, 748 So. 2d 328, 330 (Fla. 4th DCA 2000) (citing *Knight v. State*, 394 So. 2d 997, 1001 (Fla. 1981)) (when claiming deficient performance, "the specific omission or overt act upon which the claim of ineffective assistance of counsel is based must be detailed in the appropriate pleading"). It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. *Strickland*, 466 U.S. at 693. The defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been

different. *Id.* at 698. In addition, where a defendant seeks to withdraw a plea after sentencing, the defendant has the burden of proving "manifest injustice." *Johnson v. State*, 936 So. 2d 1196, 1197 (Fla. 1st DCA 2006).

. . . .

[D]uring the plea colloquy in this case, Defendant stated under oath that he was satisfied with his attorney's advice and counsel in this case. *See* Change of Plea and Sentencing Transcript at 5 (lines 3–25) – 7 (line 1), 8 (lines 21–23). "[Defendant] cannot now assert that at the time of the plea's entry he had serious doubts about his attorney's effectiveness." *Davis v. State*, 938 So. 2d 555, 557 (Fla. 1st DCA 2006) ("[A defendant] is not entitled to go behind sworn representations made to the court in a postconviction proceeding"). "Defendants are bound by the statements made by them under oath; they are not entitled to have their plea set aside by later claiming the plea was involuntary based on their allegedly perjured testimony." *Henry v. State*, 920 So. 2d 1245, 1246 (Fla. 5th DCA 2006). "Defendants have a duty to uphold the solemn oath they take to tell the truth. They are bound by their sworn answers during the colloquy." *Iacono v. State*, 930 So. 2d 829, 831 (Fla. 4th DCA 2006). "Allowing this type of claim would undermine the purposes behind the oath to tell the truth, the plea forms, and the plea colloquy's determination of voluntariness." *Id.* at 831–32. Accordingly, the claims raised are without merit.

. . . .

As to Ground One, the factual basis for the proposed motion for disqualification does not allege facts sufficient to demonstrate that Judge Griffis had a specific or personal bias against him. "[F]ear of judicial bias must be objectively reasonable." *Parker v. State*, 3 So. 3d 974, 982 (Fla. 2009) (citing *State v. Shaw*, 643 So. 2d 1163, 1164 (Fla. 4th DCA 1994)). "The subjective fear of a party seeking the disqualification of a judge is not sufficient." *Id.* (citing *Kowalski v. Boyles*, 557 So. 2d 885 (Fla. 5th DCA 1990)). "Rather, the facts and reasons given for the disqualification of a judge must tend to show 'the judge's undue bias, prejudice, or sympathy.'" *Id.* (citing *Rivera v. State*, 717 So. 2d 477, 480–81 (Fla. l998); *Jackson v. State*, 599 So.2d 103, 107 (Fla. 1992)). "Where the claim of judicial bias is based on very general and

> speculative assertions about the trial judge's attitudes, no relief is
> warranted." *Id.* (citing *McCrae v. State*, 510 So. 2d 874, 880 (Fla.
> 1987)). Because the motion would have been dismissed as legally
> insufficient had it been filed, Defendant's fails [sic] to show either error
> by counsel or manifest injustice. Accordingly, the claim raised is
> without merit.

(Ex. O at 20–22). The First DCA affirmed the decision without written opinion (Ex. R).

The relevant decision for purposes of 28 U.S.C. § 2254 is the First DCA's summary affirmance, which is the final state court adjudication on the merits of Petitioner's claim. Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235 (11th Cir. 2016) (defining the relevant decision for purposes of § 2254 review as the state appellate court's summary affirmance of the lower tribunal's decision), *petition for cert. filed*, No. 16-6855 (U.S. Nov. 15, 2016). Where, as here, "the last adjudication on the merits provides no reasoned opinion, federal courts review that decision using the test announced in Richter." Wilson at 1235. The Richter test provides that "[w]here a state court's decision is unaccompanied by an explanation," a petitioner's burden under section 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible

fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." *Id.* at 102.

Here, under the <u>Richter</u> test, Petitioner must establish there was no reasonable basis for the First DCA to affirm the denial of relief on his ineffective assistance claim. In reviewing the reasonableness of the First DCA's decision, this court may, but is not required to, look to the reasoning of the state court below (the state circuit court). The Eleventh Circuit explained in <u>Wilson</u>:

> When the reasoning of the state trial court was reasonable, there is necessarily at least one reasonable basis on which the state [appellate] court could have denied relief and our inquiry ends. In this way, federal courts can use previous opinions as evidence that the relevant state court decision under review is reasonable. But the relevant state court decision for federal habeas review remains the last adjudication on the merits, and federal courts are not limited to assessing the reasoning of the lower court.

834 F.3d at 1239.

Although an ineffective assistance of counsel claim is a federal constitutional claim which the court considers in light of the clearly established law of <u>Strickland</u>, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law." <u>Alvord v. Wainwright</u>, 725 F.2d 1282, 1291 (11th Cir. 1984) (explaining, in the context of an ineffective assistance of appellate counsel claim, that "[o]n the one hand, the issue of

ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension," but, "[o]n the other hand, the validity of the claim [counsel] failed to assert is clearly a question of state law, and we must defer to the state's construction of its own law.") (citations omitted)[4]; *see also* Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005) (holding that defense counsel cannot be deemed ineffective for failing to make a state-law-based objection when the state court has already concluded that the objection would have been overruled under state law; to conclude otherwise would require the federal habeas court to make a determination that the state court misinterpreted state law, which would violate the fundamental principle that federal habeas courts should not second-guess state courts on matters of state law); Herring v. Sec 'y Dep't of Corr., 397 F.3d 1338, 1354–55 (11th Cir. 2005) (denying federal habeas relief on ineffective assistance claim based on counsel's failure to make state law-based objection; holding that the Florida Supreme Court's conclusion that the proposed objection would have been overruled was binding and precluded federal habeas relief on the ineffective assistance claim: "The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner]

---

[4] Alvord was superseded by statute on other grounds as noted in Hargrove v. Solomon, 227 F. App'x 806 (11th Cir. 2007).

argues he should have done . . . .  It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (alterations in original) (quoting <u>Agan v. Vaughn</u>, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Here, the validity of the claim that Attorney Fletcher failed to assert, that Judge Griffis was subject to disqualification, is clearly a question of state law.  A determination of whether certain allegations satisfy Florida's legal standard for disqualification of a judge is solely within the province of the Florida courts.  *See* <u>Hendrix v. Sec'y, Fla. Dep't of Corr.</u>, 527 F.3d 1149, 1153 (11th Cir. 2008) (the federal habeas court is bound by the state court's determination that recusal or disqualification of the trial judge was not required under Florida statutory law or its Code of Judicial Conduct).  Neither the federal recusal statute, 28 U.S.C. § 455, nor the federal judicial cannons apply because they do not govern state judges.

As in <u>Alvord</u>, <u>Callahan</u>, and <u>Herring</u>, the state court has already answered the question of whether the facts alleged by Petitioner provided a sufficient legal basis for seeking recusal of Judge Griffis under Florida law—they did not.  This court must defer to the state court's determination of state law.  Attorney Fletcher's failure to raise the disqualification issue cannot be deemed deficient performance, and Petitioner

cannot show he was prejudiced by counsel's failure to raise this issue, because it had no arguable basis for success.

Petitioner failed to demonstrate that the state court's adjudication of Ground One was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of <u>Strickland</u>.  Therefore, Petitioner is not entitled to federal habeas relief on Ground One.

B.    <u>Ground Two: "Mr. Knight's guilty plea was involuntary and coerced due to the fact that counsel told Mr. Knight that she could not be adequately prepared for trial and that he should therefore enter a plea."</u>

Petitioner asserts after the trial court rejected the negotiated plea, the court took a recess to allow Petitioner to confer with Attorney Fletcher (ECF No. 2 at 6). Petitioner alleges during the recess, Attorney Fletcher informed him that she was not prepared to go to trial on the date set by the court (ECF No. 1 at 5; ECF No. 2 at 6, 22).  Petitioner alleges he felt that his only option was to either go to trial on all five counts with an unprepared attorney and potentially receive a life sentence, or enter an open plea to two charges and "cut his losses" (ECF No. 2 at 6, 22).  Petitioner contends Attorney Fletcher's advising him that she was unprepared for trial constituted coercion and a threat to abandon him if he refused to enter a plea, which forced him to enter an involuntary plea (ECF No. 1 at 5; ECF No. 2 at 22–23).

Respondent concedes Petitioner exhausted this claim in the state courts (ECF No. 12 at 16). Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law, nor was it based upon an unreasonable determination of fact (*id.* at 16–20).

1.    Clearly Established Federal Law

A defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. Lafler v. Cooper, 566 U.S. 156, 162, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012) (citing Missouri v. Frye, 566 U.S. 133, 140, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012), and McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." Lafler, 566 U.S. at 168. The two-part Strickland test applies to claims that counsel was ineffective during the plea process. Lafler, 566 U.S. at 162–63 (applying Strickland's two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); Frye, 566 U.S. at 140, 145–47 (applying Strickland's two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); Hill v. Lockhart, 474 U.S. 52, 48, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (applying Strickland's two-part test to

defendant's challenge to his guilty plea based on ineffective assistance of counsel).

As previously discussed, <u>Strickland</u>'s first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" <u>Hill</u>, 474 U.S. at 57 (quoting <u>Strickland</u>, 466 U.S. at 688). The focus of inquiry under the performance prong of the <u>Strickland</u> standard is whether counsel's assistance was "reasonable considering all the circumstances." <u>Strickland</u>, 466 U.S. at 691. The Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court . . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

<u>McMann</u>, 397 U.S. at 769–70.

In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56–57 (quoting McMann, 397 U.S. at 771).  Under this standard, representation is ineffective only if counsel commits "serious derelictions" of her duty when advising the accused. Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991).  Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990).  The Eleventh Circuit has commented that "[t]he right to competent plea bargain advice is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam).  "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial." *Id.*  This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant. *Id.*

Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea. *Id.* at 1509.

Strickland's second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59.

2.    Federal Review of State Court Decision

Petitioner raised this claim as Issue Two in his Rule 3.850 motion (Ex. O at 14–15). The state circuit court adjudicated the claim as follows:

> This Court [ ] notes as to Ground Two, that the fact that Defendant was presented with "unpleasant alternatives" does not render his plea involuntary. *Stinson v. State*, 839 So. 2d 906, 909 (Fla. 5th DCA 2003). Here, counsel indicated on the record that, with some exceptions approved by Defendant, she had fully investigated the case. *See* Petition to Enter Plea of Guilty at 1 (para. 2.a.) ("I believe that my attorney is fully informed on all such matters. S/he has properly investigated all witnesses (including alibi witnesses), facts of this case, defenses available to me, and motions appropriate to file on my behalf. (Handwritten addition:) Deposed everyone except victim + [sic] those who (she) went to hospital with her [sic]"), 5 (para. 23.a.) ("I believe the Defendant and I are fully informed on all such matters. I have fully investigated this case and all witnesses for and against the Defendant (including alibi witnesses if any were revealed to me). I have discussed

with the Defendant the defenses available to him/her and motions that might be filed on the Defendant's behalf."); Change of Plea and Sentencing Transcript at 5 (lines 3–24), 7 (lines 16–25) – 8 (lines 1–3), 9 (lines 12–25) – 10 (lines 1–6).  Furthermore, the decision to enter the plea was Defendant's own, based on his desire to bring this case to end. *See* Change of Plea and Sentencing Transcript at 11 (lines 22–25) – 12 (lines 1–11 ), 19 (lines 20–25) – 21 (lines 1–).   For this reason, Defendant fails to show either error by counsel or manifest injustice. Accordingly, the claim raised is without merit.

(Ex. O at 20–21).  The First DCA affirmed the decision without written opinion (Ex. R).

According to the court's comments during the change of plea hearing on February 7, 2013, Petitioner's trial was scheduled to take place later that month (*see* Ex. G at 3).   After the court rejected the negotiated plea, and Attorney Fletcher conferred with Petitioner during the recess, Attorney Fletcher questioned Petitioner as follows on the record regarding his decision to enter an "open" or "straight up" plea:

> MS. FLETCHER:  Prior to coming to court today, did you and I meet and have an opportunity to talk about this case?

> THE DEFENDANT:  Yes, ma'am.

> MS. FLETCHER:  Did I previously come to the Bradford County Jail, where you were being held, last week and go over this plea with you again?

> THE DEFENDANT:  Yes, ma'am.

MS. FLETCHER:  During the time we were at the Bradford County Jail, approximately some two hours, did you have an opportunity to ask me all of the questions that you thought needed to be answered?

THE DEFENDANT:  Yes, ma'am.

MS. FLETCHER:  Were you satisfied with the answers I gave you during the meeting last week in Bradford County?

THE DEFENDANT:  Yes, ma'am.

MS. FLETCHER:  At the time we left, did you ask me to do any further investigation for you or had I answered all of your questions?

THE DEFENDANT:  You answered them all.

MS. FLETCHER:  Today when I came to the Levy County Jail, did we enter into that discussion again?

THE DEFENDANT:  Yes, ma'am.

. . . .

MS. FLETCHER:  Did you—I was only there approximately 45 minutes to an hour, but did you have sufficient time to ask me any and all questions that you had?

THE DEFENDANT:  Yes, ma'am.

MS. FLETCHER:  You understand that, since we came to court, although we had a negotiated plea with the State, that plea changed in the sense that these are now the only two charges before the Court and the others got dismissed, but the sanctions haven't changed?

THE DEFENDANT:  Yes, ma'am.

MS. FLETCHER:  You understand that when we met this morning, I told you and when we met over in Bradford County, that the

Court on these two charges, not counting the scoresheet, would be able to sentence you up to 45 years in prison?

THE DEFENDANT: Yes, ma'am.

MS. FLETCHER: Okay. And we talked about the sex offender probation?

THE DEFENDANT: Yes, ma'am.

MS. FLETCHER: And we talked about the trailing probation?

THE DEFENDANT: Yes, ma'am.

MS. FLETCHER: Did you—do you think—I know today's been a little hurried and I know that it's been difficult, but do you think that, given the conversations you and I've had today, that you understand the decision you have made?

THE DEFENDANT: Yes, ma'am.

MS. FLETCHER: You understand that the Court made it perfectly clear that we had a right to go to court, a right to a trial, a right to confront your accusers; you understand that?

THE DEFENDANT: Yes, ma'am.

. . . .

MS. FLETCHER: Okay. You—we have taken all of the depositions in this case, except for the victim, the lady who she first made contact with and another lady who was at the hospital at the time that she was interviewed by FDLE. You understand that we did not take those depositions with your approval because of not wanting to subject her to the deposition and the State's desire that she not be deposed?[5]

---

[5] The record indicates that Attorney Fletcher subpoenaed the victim, Ms. Foran, for her deposition on November 6, 2012, three months prior to Petitioner's plea (Ex. F at 103–04).

THE DEFENDANT:  Yes, ma'am, I understand.

MS. FLETCHER:  You understand that none of those depositions have been taken and, when we enter this plea today, that there will be no opportunity to take those depositions?

THE DEFENDANT:  Yes, ma'am.

MS. FLETCHER: Okay.  You want—what I told the Court about your desire to withdraw your previously entered plea and tender a plea of guilty—and we talked about that it had to be a guilty plea; did we not?

THE DEFENDANT:  Yes, ma'am, we did.

MS. FLETCHER:  And, at first, you had some hesitancy about that and then you openly said that you would plead guilty?

THE DEFENDANT:  Yes, ma'am.

MS. FLETCHER:  You understand the difference in a nolo contendere plea, where a nolo contendere plea is saying, I'm going to enter this plea because it's in my best interest, I don't admit or deny.

THE DEFENDANT:  Yes, ma'am, I understand.

MS. FLETCHER:  But, when you plead guilty, you're saying, I committed these offenses.

THE DEFENDANT:  Yes, ma'am.

MS. FLETCHER:  Okay.  Are you satisfied with the services of our office?

THE DEFENDANT:  Yes, ma'am.

---

Apparently, Attorney Fletcher and Petitioner agreed that Ms. Foran would not be deposed.

Case No.:  1:16cv135/WTH/EMT

. . . .

MS. FLETCHER: Okay. Are you entering this plea knowingly, freely, and voluntarily?

THE DEFENDANT: Yes, ma'am.

. . . .

MS. FLETCHER: Okay. I've told you that, in terms of the arrest, it was probable cause, but, as you stand before the Court today, you are taking responsibility for what happened; correct?

THE DEFENDANT: Yes, ma'am.

. . . .

MS. FLETCHER: Are you entering this plea before Judge Griffis as knowingly, freely, and voluntary?

THE DEFENDANT: Yes, I am.

MS. FLETCHER: Are there any questions that you want to ask me or the Court prior to entering this plea?

THE DEFENDANT: No, ma'am.

(Ex. G at 4–13).

Additionally, prior to entering the "open" plea, Petitioner verified the following,

under penalty of perjury, in the written (but rejected) plea agreement:

I am represented by an attorney, who is GLORIA W. FLETCHER, ESQ. I have told my attorney all the facts and circumstances about the charges against me, motions I believe should be filed, defenses I believe I may have and witnesses I believe I may have (including alibi witnesses). My attorney and I have discussed the allegations and charges against me, the evidence in this case, including depositions, witnesses disclosed by the State, arrest reports and motions that may be filed on my behalf. My attorney and I have discussed the physical evidence in this

case and whether any DNA associated with that physical evidence could exonerate me.

(Ex. O at 29).

Attorney Fletcher expressly certified the following in the written (but rejected) plea agreement:

> I have read and explained to the Defendant the allegations contained in the Information(s), as well as the maximum penalty for each count. I have discussed with the Defendant the facts and circumstances about the charges and any lesser included offenses. I have explained to the Defendant the possible penalties to which s/he may be subjected as a result of this plea. . . .

> I believe the Defendant and I are fully informed on all such matters. I have fully investigated this case and all witnesses for and against the Defendant (including alibi witnesses if any were revealed to me). I have discussed with the Defendant the defenses available to him/her and motions that might be filed on the Defendant's behalf.

(Ex. O at 33).

The state court's rejection of Petitioner's claim, that Attorney Fletcher "forced" him to enter a plea by informing him that she was unprepared to go to trial on the scheduled date, could have been based upon the theory that Petitioner's allegation was refuted by the sworn statements of Petitioner and Attorney Fletcher. Additionally, the state court record casts doubt as to whether Petitioner would have insisted on going

to trial, even if Attorney Fletcher had not informed him that she was not prepared to go to trial on the scheduled trial date. Petitioner did not allege in state court that he had any viable trial defenses (*see* Ex. O); and Petitioner's relieving the victim of being subjected to a pre-trial deposition virtually decimated any possibility of impeaching her trial testimony with any prior inconsistent statements.

Additionally, Petitioner acknowledges that if he went to trial, he faced essentially a life sentence, because his maximum sentence exposure on the five charges was 100 years in prison (30 years for each of the three first degree felonies, and 5 years for each of the two third degree felonies). By entering an "open" plea, after Attorney Fletcher successfully negotiated a dismissal of three charges and a reduction in severity level of a fourth charge, Petitioner's reduced his maximum sentence exposure to 45 years (30 years for one first degree felony and 15 years for one second degree felony). With the State already having a formidable case,[6] and with no valid defenses, it would not have been rational for Petitioner to have refused to

---

[6] The victim's trial testimony likely would have mirrored her statements to law enforcement officers as set forth in the arrest warrant (*see* Ex. O at 24–27), and there was physical evidence consistent with the victim's allegation that Petitioner held her against her will for several hours, used intimidation or physical force to prevent her from reporting the offenses to law enforcement, and assaulted her once and raped her twice, including a forensic nurse's observation that the victim suffered slight vaginal tearing (*see id.* at 27).

enter an "open" plea conditioned on the State's dramatically reducing his maximum sentence exposure.

While the pertinent inquiry is whether Petitioner would have insisted on going to trial, rather than pleading guilty, but for Attorney Fletcher's informing him that she was unprepared to go to trial on the scheduled date, the record contains no support for that proposition beyond Petitioner's bald, cursory assertion. Consequently, the state court could have reasonably concluded that Petitioner failed to demonstrate a reasonable probability he would have insisted on going to trial but for Attorney Fletcher's allegedly stating she was unprepared for trial, because (1) Petitioner knew the facts and evidence underlying the charges, (2) Petitioner knew that Fletcher had investigated the case, (3) Petitioner did not allege he had a viable defense to any of the charges, and (4) Petitioner knew that his maximum sentence exposure would be reduced from 100 years to 45 years if he entered a plea. *See* Diveroli v. United States, 803 F.3d 1258, 1265 (11th Cir. 2015) (explaining that it would not have been rational for defendant to have rejected plea agreement because of the evidence of his guilt and the lack of any valid defenses); Lynch v. Sec'y, Fla. Dep't of Corr., 776 F.3d 1209, 1218–19 (11th Cir. 2015) (a petitioner who has no viable trial defenses cannot establish prejudice from counsel's advice to plead guilty); *see also, e.g.,* Sierra v. Fla.

Dep't of Corr., 657 F. App'x 849, 852 (11th Cir. 2016) (unpublished but recognized

as persuasive authority) (petitioner failed to show Strickland prejudice with respect

to counsel's advising him that if he did not enter an "open" guilty plea and was

convicted at trial, he faced a mandatory life sentence; with a video recording of the

crime and no valid defenses, it would not have been rational for petitioner to have

rejected the plea agreement and proceeded to trial; further, if petitioner had decided

to proceed to trial instead of pleading guilty, the State might well have chosen not to

enter a nolle prosequi on the two counts of aggravated assault with a firearm as it had

promised to do in the plea agreement); Calhoun v. Sec'y, Fla. Dep't of Corr., 607 F.

App'x 968, 972–73 (11th Cir. 2015) (petitioner failed to show Strickland prejudice

with respect to counsel's failure to advise him of double jeopardy defenses prior to

entry of no contest plea; petitioner provided no substantive argument in state or

federal court to meaningfully address prejudice prong, and instead asserted in a

cursory fashion that, had he known of the potential defense, he would not have pled

no contest and would have insisted on going to trial; while petitioner stated in his Rule

3.850 motion he attempted to withdraw guilty plea, he did not specifically argue that

his decision was related to counsel's failure to advise him of double jeopardy defense;

moreover, the record cast doubt on whether petitioner would have insisted on going

to trial even if he had known of potential double jeopardy defense, since counsel

successfully negotiated a plea which afforded petitioner the lowest possible sentence).

Petitioner failed to demonstrate that the state court's rejection of his claim, that

Attorney Fletcher's "coercive" advice that she was not prepared to go to trial on the

scheduled trial date "forced" Petitioner to enter his plea, was contrary to or an

unreasonable application of Strickland, or based upon an unreasonable determination

of the facts. Therefore, Petitioner is not entitled to federal habeas relief on Ground

Two.

## IV.   CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States

District Courts provides that "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant." If a certificate is

issued "the court must state the specific issue or issues that satisfy the showing

required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice

of appeal must still be filed, even if the court issues a certificate of appealability. 28

U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has

made a 'substantial showing of the denial of a constitutional right.'" Miller-El, 537

U.S. at 336 (quoting § 2253(c)(2)).  A petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (internal quotation marks and citation omitted); *see also* Buck v. Davis, No. 15-8049, 580 U.S. —, 2017 WL 685534, at *12 (Feb. 22, 2017) (defining the relevant question as whether the district court's decision was "debatable") (citing Miller-El, 537 U.S. at 327).  The petitioner here cannot make that showing.   Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.     That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 22<u>nd</u> day of March 2017.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.